IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT BUCCELLA,

    Plaintiff,                                  Case No: 3:22-CV-01246

v.

QUALITY DISCOUNT ROOFING
LLC and JAMES E.
SODERLUND, JR.

    Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff, ROBERT BUCCELLA (hereinafter, "Buccella"), by and through his undersigned counsel, and hereby sues Defendants, QUALITY DISCOUNT ROOFING LLC (hereinafter, "QDR") and JAMES E. SODERLUND, JR. (hereinafter, "Soderlund") (collectively the "Defendants"). In support thereof, Plaintiff states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This is an action for violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (hereinafter, the "FLSA") stemming from the Defendants' failure to pay overtime compensation due to Buccella, the Defendants' unlawful termination of Buccella in retaliation for his complaints regarding the FLSA

violations, and the Defendants' failure to furnish Buccella with his last paycheck in violation of Section 448.08, Florida Statutes.

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 because this action involves a federal statute.

3. The Court has personal jurisdiction over the Defendants because the Defendants regularly transact business in this district and because the cause of action arose from events and omissions occurring in Duval County, Florida.

4. Venue is proper because: a) QDR's principal place of business is located Duval County, Florida; b) Soderlund resides in Duval County, Florida; and c) the events and omissions giving rise to the claims occurred in Duval County, Florida.

5. Buccella is an adult individual, is otherwise *sui juris*, and resides in Duval County, Florida. Buccella is a former employee of QDR.

6. QDR is a Florida limited liability company with its principal place of business located in Jacksonville, Florida. QDR holds itself out to the public under the registered fictitious name of Quality Discount Roofing and Construction.

7. Soderlund is an adult individual, is otherwise *sui juris*, and resides in Duval County, Florida. Soderlund is a manager of QDR and is the owner and founder of QDR.

8. Buccella was an employee of the Defendants within the meaning of 29 U.S.C. § 203(e)(1).

9. The Defendants are Buccella's "employer" within the meaning of 29 U.S.C. § 203(d).

10. At all times material hereto, Soderlund was substantially in control of the terms and conditions of Buccella's work, hours, and compensation.

## FACTUAL BACKGROUND

11. Buccella was employed by Defendants from approximately November 8, 2021 through October 3, 2022.

12. During his employment with the Defendants, Buccella worked for Defendants approximately 55 hours per week on average.

13. However, during the entire duration of his employment with the Defendants, Buccella was only paid for 40 hours of work for each week.

14. All of Buccella's pay stubs reflect payment for 40 hours of time despite the Defendant's knowledge that Buccella, at the direction of the Defendants, worked more than 40 hours on a weekly basis.

15. In fact, Buccella was required by the Defendants to document his hours on a daily basis by clocking in and out via an application on his cellular phone.

16. Buccella was wrongfully denied overtime pay, as the Defendants did

not pay him the 1.5 times pay for all hours worked in excess of forty in a workweek, as required by 29 U.S.C. Section 207(a)(1).

17. Buccella frequently complained to the Defendants concerning the unpaid wages and overtime, but the Defendants falsely claimed that Buccella was an exempt employee and was only entitled to be paid on a salaried basis without acknowledging that his non-exempt salaried work still required overtime compensation.

18. While Buccella was hired to be a construction project "manager," this moniker was false, as he was employed as a project "manager" in name only. In reality, the Defendants bestowed Buccella with a false title to avoid paying mandatory overtime compensation.

19. Buccella's role with QDR was not consistent with that of a construction project manager.

20. Instead, the majority of Buccella's work was comprised of physical labor, including but not limited to roof repair, floor and trim installation, house framing, drywalling, sanding, installing toilets and sinks, painting, hauling trash, hauling materials, and various other construction labor.

21. During his employment with the Defendants, Buccella did not exercise discretion and independent judgment with respect to matters of significance.

22. Buccella had no authority to hire or fire employees, subcontractors, or day laborers.

23. Buccella did not determine what suppliers to use.

24. Buccella did not interview prospective employees, subcontractors, or suppliers.

25. Buccella did not negotiate payment rates with contractors or suppliers.

26. Buccella did not create construction plans or designs or determine the scope of work on projects.

27. Buccella did not qualify QDR as a general contractor; Buccella did not possess a contractor's license.

28. While the administrative employees at QDR were provided access to company vehicles, Buccella was not provided a company vehicle, even after requesting one. Buccella drove his own personal vehicle from job site to site to partake in manual labor.

29. The Defendants paid for a trailer hitch to be placed on Buccella's personal vehicle in order to have Buccella haul company materials.

30. Buccella was required to log his hours on a daily basis by clocking in and out. Administrative employees at QDR were not required to do so.

31. Buccella was required to maintain a GPS tracker via an application

on his cellular phone that reported his precise location to the Defendants. Administrative employees were not required to maintain a GPS tracker.

32. While the administrative employees at QDR typically spent a large portion of their time in the office, Buccella rarely spent any time at the office.

33. The great majority of Buccella's time was spent travelling between job sites and performing the tasks he was directed to perform by the Defendants. This primarily consisted of physical labor.

34. QDR provided Buccella with company uniforms in the form of <u>blue</u> collared shirts and <u>yellow</u> t-shirts, which he was required to wear depending on the task performed. Specifically, Buccella was instructed to wear the blue collared shirt when interacting with customers and to wear the yellow t-shirt when performing construction labor.

35. QDR provided Buccella with two blue collared shirts and four yellow t-shirts. On a typical day, Buccella would wear the yellow t-shirt for most of the day, switch into the blue collared shirt to speak with a customer, and then change back into the yellow t-shirt to continue his laborious manual work activities.

36. While Buccella occasionally maintained limited "supervisory" authority over certain QDR employees, he never maintained any such authority over more than one employee at any given time. Specifically, from time to time

throughout Buccella's employment, QDR employed a construction repair professional who occasionally worked alongside Buccella, performing repair work together. However, QDR never employed more than one construction repair professional at any time throughout the duration of Buccella's employment.

37. Moreover, any such supervisory authority over the repair professionals was limited solely to Buccella's ability to provide reports and input to Buccella's supervisors. Buccella did not have the power to hire or fire any QDR employees, nor did he control what job sites or functions said employees were directed to work on.

38. Buccella was also occasionally tasked with supervising the work of construction subcontractors. However, Buccella's role with respect to the subcontractors was akin to "babysitting." Buccella served as a middleman, passing along to the subcontractors the directives provided by Buccella's supervisors. Buccella also issued reports to his supervisors concerning the number of workers on site and the progress completed.

39. A significant portion of Buccella's time at QDR was spent performing construction labor on his own, with no subcontractors or other employees present.

40. Buccella did not have the authority to hire workers or assign other

QDR employees to assist him when he was working alone on a project.

41. Buccella frequently complained to QDR and Soderlund that the responsibilities he was being directed to perform were construction labor activities, as opposed to the management activities he intended to perform when he agreed to accept the position. Buccella also frequently complained to the Defendants that he was entitled to overtime pay and compensation for all of the hours worked. These complaints were disregarded until he was terminated for the requests.

42. While the Defendants maintained records of Buccella's hours by requiring Buccella to clock in and out, Buccella would occasionally forget to clock in. In such circumstances, Buccella would ask the Defendants to clock him in for the time that he began work for the day. However, the Defendants refused to do so.

43. The Defendants controlled the manner in which Buccella was to perform his work, Buccella did not have any opportunity for profit or loss depending on his managerial skill, Buccella made no investment in equipment or materials required for his work, Buccella's services rendered did not require special skills, and Defendants were Buccella's sole source of income during his employment with the Defendants.

44. The services performed by Buccella were essential, necessary and an

integral part of the business conducted by the Defendants.

45. Soderlund exercised significant control over the day-to-day obligations and performance of Buccella's work. In fact, Soderlund himself specifically demanded that Buccella work in excess of 40 hours, and Soderlund specifically directed to Buccella to perform labor activities, including construction work on Soderlund's personal real estate property.

46. Buccella repeatedly notified Soderlund directly that Buccella was almost exclusively performing construction labor activities, that he was working in an excess of 40 hours per week, and he was not being paid proper wages or overtime compensation.

47. Buccella's job was subject to the FLSA wage provisions.

48. Soderlund terminated Buccella for insisting on his FLSA rights.

49. All conditions precedent to the filing of this action have been performed, have occurred, or have been waived.

## COUNT I
**UNPAID OVERTIME COMPENSATION IN VIOLATION OF 29 U.S.C. § 207
(AGAINST QDR AND SODERLUND)**

50. Buccella re-alleges the allegations contained in paragraphs 1-49 as if fully stated herein.

51. The overtime wage provision set forth in 29 U.S.C. § 207 applies to Defendants, as QDR has engaged in commerce under the definition of the FLSA

and has revenues of greater than $500,000 annually.

52. Throughout Buccella's employment with the Defendants, he was not paid overtime compensation (1.5 times pay) for the hours worked in excess of forty (40) per week.

53. Throughout Buccella's employment with the Defendants, he was not paid any wages at all for the hours worked in excess of (40) per week.

54. As a direct result of the Defendants' violations of the FLSA, Buccella suffered damages by being denied overtime wages in accordance with the FLSA.

55. Defendants have not made any good faith effort to comply with the FLSA with respect to its compensation to Buccella.

**WHEREFORE**, the Plaintiff, ROBERT BUCCELLA, demands judgment against the Defendants, QUALITY DISCOUNT ROOFING LLC and JAMES E. SODERLUND, JR., including the following relief: (a) a judgment that Defendants violated the overtime compensation provisions of the FLSA; (b) that the Court award Buccella overtime compensation and a premium for all the previous hours worked over 40 hours in any work week during the last two years; (c) that the Court award payment of liquidated damages of an equal amount of the awarded overtime wages pursuant to 29 U.S.C. § 216; (d) that the Court award payment of Buccella's attorneys' fees and costs pursuant to 29 U.S.C. § 216; (e) that the Court award pre- and post-judgment interest; and (f) that the Court award any

other and further relief as it deems just and proper.

## COUNT II
## UNLAWFUL TERMINATION PURSUANT TO
## ANTI-RETALIATORY PROVISION OF FLSA, 29 U.S.C. § 215
## (AGAINST QDR AND SODERLUND)

56. Buccella re-alleges the allegations contained in paragraphs 1-49 as if fully stated herein.

57. Buccella frequently complained that he did not receive compensation for the overtime he worked. Buccella also frequently complained that he should not continue to be directed to work more than 40 hours in a week without overtime compensation. These complaints were disregarded.

58. In mid-to-late September 2022, Buccella sent a series of text messages to Defendants demanding that he be compensated for all of his unpaid overtime and demanding that he be provided a company vehicle or otherwise be properly compensated for the mileage on his personal vehicle. The Defendants failed and/or refused to resolve these concerns.

59. In one of the text messages, Buccella indicated that if the issues were not resolved, "I will consider myself fired." The issues were not resolved, but Buccella neither resigned, nor was he informed he was terminated.

60. Buccella's oral and written complaints to the Defendants regarding the unpaid overtime constituted a "complaint" and was protected activity under the FLSA. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).

61. On September 27, 2022, Buccella received his weekly paycheck three days early. As a result, Buccella was unsure whether he was still employed with the Defendants.

62. For the remainder of that week, the office was closed due to Hurricane Ian. That following Monday, October 3, 2022, Buccella continued to perform his work duties, as he had not been informed as to his employment status, and the Defendants were not responsive.

63. Despite Buccella's attempts to obtain clarification of his employment status, the Defendants failed to provide any explanation and ceased all contact with Buccella.

64. When the Defendants continued to ignore him, Buccella realized that he had been terminated.

65. The Defendants terminated Buccella in retaliation for Buccella's complaints regarding the Defendants' violations of the FLSA, in violation of 29 U.S.C. § 215.

66. Buccella has been damaged as a result of the unlawful termination.

**WHEREFORE**, the Plaintiff, ROBERT BUCCELLA, demands judgment against the Defendants, QUALITY DISCOUNT ROOFING LLC and JAMES E. SODERLUND, JR., including the following relief: (a) a judgment that Defendants wrongfully terminated Buccella in violation of the anti-retaliatory provisions of

the FLSA; (b) that the Court award Buccella lost wages, including salaries, commissions, bonuses, raises, benefits, front pay, back pay, and amounts for lump sum tax consequences; (c) that the Court award payment of liquidated damages of an equal amount of the awarded lost wages; (d) that the Court award payment of Buccella's attorneys' fees and costs pursuant to 29 U.S.C. § 216; (e) that the Court award pre- and post-judgment interest; and (f) that the Court award any other and further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

67. Buccella demands a trial by jury on all issues so triable.

RESPECTFULLY submitted on this day, November 14, 2022.

BITMAN, O'BRIEN & MORAT, PLLC

/s/ Bryan Jones, Esq.
Bryan Jones, Esquire
Florida Bar No.: 91743
bjones@bitman-law.com
kimy@bitman-law.com
Ronnie J. Bitman, Esquire
Florida Bar No.: 0744891
rbitman@bitman-law.com
615 Crescent Executive Ct. Suite 212
Lake Mary, Florida 32746
Telephone: (407) 815-3110
Facsimile: (407) 815-3114
*Attorneys for Defendant*